PEOPLE *v.* SHORR.

1. EVIDENCE—INTOXICATING LIQUORS—ODOR COMPETENT EVIDENCE.
   The odor of intoxicating liquor may furnish competent
   and often convincing evidence of its locality or proximity.

2. CRIMINAL LAW—INTOXICATING LIQUORS—ARREST WITHOUT WAR-
   RANT—REASONABLE GROUNDS FOR SUSPICION.
   In a prosecution for the illegal transportation of intoxi-
   cating liquors, testimony by the police officers, who made
   the arrest without a warrant, that they had information
   that defendants were regularly engaged in selling in-
   toxicating liquors, that they watched them going from
   house to house and were informed that they would de-
   liver liquor early the following morning, that the next
   morning they saw them driving in an automobile and stop
   at a house they had visited the night before, that they
   saw a liquid dripping from the running board, which
   on approaching they detected by its odor as moonshine
   whisky, and that on looking into the automobile they saw
   ten 5-gallon cans and a 2-gallon jug partly covered by a
   robe, *held*, sufficient to carry the case to the jury and to
   warrant them in finding that the officers had reasonable
   grounds for believing that defendants were engaged in
   illegally transporting intoxicating liquors, and to justify
   their arrest and seizure of the liquor without a warrant.

3. SAME—TRIAL—INSTRUCTIONS—RIGHTS OF CODEFENDANTS TRIED
   TOGETHER.
   Where defendants, by consent of their counsel, were tried
   together, and they were charged with the same offense,
   and the testimony offered applied equally to both, and
   their counsel, in his requests to charge, referred to them
   unitedly as "respondents," an instruction by the trial
   court, in effect, that if the jury believed, under the testi-
   mony and instructions of the court, that respondents were
   guilty as charged, then a verdict of guilty in the case
   should be returned, but if the people had not established
   their case, then a verdict of not guilty in each case should
   be returned, *held*, not erroneous on the ground that the
   right of the jury to acquit one and convict the other was
   invaded by said instruction.

Exceptions before judgment from Oakland; Gillespie (Glenn C.), J.    Submitted April 18, 1924.    (Docket No. 128.)    Decided June 2, 1924.

Harry Shorr and Sam Shorr were convicted of violating the liquor law.    Affirmed.

*Charles S. Matthews,* for appellants.

*A. Floyd Blakeslee,* Prosecuting Attorney, for the people.

STEERE, J.    Defendants were convicted in the circuit court of Oakland county under a charge of illegally transporting intoxicating liquor within the township of Bloomfield in said county, on June 5, 1923.    A stay of sentence pending an appeal was granted and the case is here for review on exceptions before sentence.    Upon their trial neither of the defendants took the stand as a witness and no testimony was offered by the defense.    Excepting the last, the substance of defendants' 13 assignments of error condenses to the proposition that from start to finish there was no competent testimony in the case to justify the committing magistrate in holding the accused to the circuit court for trial, or the trial court to submit the case to the jury.    When the case was called preliminary motions were made for the defense to quash the proceedings and discharge the accused because no *prima facie* case was made before the justice who bound them over for trial and to suppress the evidence as incompetent because obtained by illegal arrest, search and seizure.    Throughout the trial objections were made to the evidence of the prosecution for similar reasons.    At conclusion of the evidence a motion for discharge of defendants and request for directed verdict followed on similar grounds.    Right of review was saved by motions, ob-

jections, requests and exceptions timely made as the trial progressed.

It is undisputed that the officers who arrested defendants and seized the liquor they were transporting in their automobile had no warrant for arrest, or search and seizure, and the gist of the defense, urged in various aspects, is that the officers had no reasonable ground when the arrest was made to believe defendants guilty of committing the offense for which they arrested them. The arrest was made early in the morning of June 5, 1923, on Grand avenue, in the outskirts of the city of Pontiac, just outside its corporate limits, in Bloomfield township, the location being known as "South End," and was inhabited mostly by colored people and foreigners.

Apparently to provide that district with a measure of police protection the sheriff of Oakland county had appointed as deputy sheriffs two colored men named Moody and Whitfield who had resided in that locality for several years and were well informed as to people and conditions there. They knew defendants by sight, knew they did not reside in that community and had seen them in that vicinity on several occasions. Complaints had been made to them, as Moody testified, "that these two men were bringing in numerous amounts of liquor." Whitfield saw them in South End the night before their arrest and as he states "shadowed them," discovering they were going from house to house, and amongst other places saw they went to a house where a man he knew named Wallace, who was a drayman, happened to be. Later that evening, after defendants had left the neighborhood, the officers saw Wallace on the street and learned from him defendants' mission in visiting that community. Whitfield testified he told them "these two men were taking orders and were to be in the next morning to deliver the booze." Moody's version of the communication was:

"He told us the evening before the morning we did catch these two fellows, these two gentlemen over here, they were coming in regularly putting in liquor and he said, 'Now, if you fellows are right on the job tomorrow morning about six o'clock or a little after,' he said, 'you will catch them.'"

Acting on this information, and suggestion, the two officers were out early next morning on the street, "dressed in overalls to go to work," and a little after 6 o'clock saw defendants approaching in an Oakland automobile riding in the front seat. In the concluding part of their itinerary which the officers watched, they were coming from the north and turned in on Detroit street, went a block east to the corner where the officers were and turned north onto Grand avenue, went part of a block on that street and stopped in front of a house.

Whitfield testified that as the car approached the corner where they were he noticed some liquor spilling from it, and as they passed he detected the odor of moonshine whisky. The car stopped in front of a house where Whitfield had seen them go the night before. One of defendants then got out, the other remaining seated at the wheel. The officers then ran up with their revolvers drawn, ordered defendants to hold up their hands and arrested them. At that time liquor was still dripping over the running-board at the back part of the car. Both officers testified they saw it and readily recognized the odor of moonshine whisky. They then looked into the car and saw back of the front seat ten 5-gallon cans and a 2-gallon jug partly covered by a robe. These receptacles all contained whisky. The liquor they saw dripping from the car was running out of one of the cans the cork, or stopper, of which had loosened and about half of the contents had then escaped. The other cans and jug were well filled. Moody's story

of the sequence of events relating to the arrest, search, and seizure, is in part as follows:

"We detected the odor of whisky when we first went up to the car.

"*Q.* Was that before or after you placed the men under arrest?

"*A.* The whole thing occurred at once. The minute we placed the men under arrest we discovered the odor of liquor in the car and it was easily smelled. * * *

"*Q.* So all the things that happened in connection with this case, and what you found, this liquor, and what they said, etc., was after you first put them under arrest, was it not?

"*A.* All things happened, yes, after we put them under arrest."

Whitfield's account, on cross-examination, of the circumstances of the arrest, is in part as follows:

"Before Moody and I got to them they had stopped just long enough so the one driving was out on the ground. He didn't tell me he had a flat tire. I had the gun in my hand when I ran up to them. I pulled it when I was about fifteen feet from the car. I immediately told them to stick up their hands and put them under arrest. The first thing I did was to stand them up at the point of a gun and put them under arrest, and after that we made an investigation to see what they had in the car. We did not investigate thoroughly, but what investigation we did make was after we held them up at the point of a gun and put them under arrest. I knew at the time I put them under arrest because the liquor was pouring out. I knew it was liquor because I smelled it."

Counsel for defendants urges in his brief that it was for the trial court "to determine judicially as to whether or not the officers, under the circumstances in the case and according to their own testimony, which was undisputed, had reasonable grounds upon which to make an arrest," and in submitting that question to the jury the court was in error. This is but the postulate to counsel's contention that it was the duty of the court under the undisputed testimony to direct

a verdict for defendants, with which we are unable to agree.

The testimony of these officers tended to show that they had heard complaints in regard to defendants' selling liquor in South End, they had seen them in that locality on previous occasions, knew them by sight and knew they did not live in that vicinity, saw them there on the previous evening and watched them going from house to house, were told by Wallace, who happened to be in one of the houses they stopped at, what they were doing, what their purpose was and when they would return to deliver the liquor they had taken orders for. At the time suggested by Wallace they saw defendants return in their auto and stop at a house they had visited the night before. They also saw some liquid dripping from the car both as it passed them and when it stopped, which they recognized by its odor as moonshine whisky.

The court did not even assume to tell the jury if they believed the testimony of the officers it was their duty to convict, but in a careful charge left it to them to decide what facts were proven beyond reasonable doubt, explaining fully the nature of the offense and rights of the officers under such circumstances, among other things twice reading to the jury the following request of defendants' counsel:

"Before the jury can find the respondents guilty of the offense charged in the case at bar they must be convinced beyond a reasonable doubt that at the actual moment of making the arrest the officers had in their possession such knowledge, and not mere suspicion, as would lead a reasonable man to believe a felony was being committed, and in this connection it is proper for the jury to take into consideration the testimony of the officers as to the method of the arrest, and what they actually knew at the time of making the arrest, and unless the jury shall believe beyond a reasonable doubt that at the time of the actual making of the arrest the officers had such knowledge and not mere

suspicion as would justify them in acting, then its verdict must be that of 'not guilty.' "

It is now settled as a matter of law, as it long has been as a matter of common knowledge, that known distinctive odors, both pleasant and disagreeable, of many things which both men and beasts desire to get or get away from furnish competent and often convincing evidence of the locality or proximity of such things. *People* v. *Savage,* 225 Mich. 84; *People* v. *Schregardus,* 226 Mich. 279. Under these and the following cases there was ample testimony to carry the case to the jury and to warrant them in finding that the officers when they made the arrest and seizure had reasonable grounds for believing defendants were engaged in illegally transporting intoxicating liquor, and to justify their arrest and seizure without a warrant. *People* v. *Bressler,* 223 Mich. 597; *People* v. *Guertins,* 224 Mich. 8; *People* v. *Herbst,* 224 Mich. 54.

Defendants' 13th and last assignment of error is directed against the following portions of the court's charge:

"If, under the testimony and instructions of the court, you come to the conclusion that the respondents are guilty as charged in the information, then your foreman will report a verdict of guilty in the case. If, on the other hand, you arrive at the conclusion that the people have not established their case and that the respondents are not guilty under the testimony and instructions of the court, your foreman will report a verdict of not guilty in each case."

It is urged that this instruction in substance directed the jury that they must find both defendants guilty or both innocent and invaded their right to acquit one and convict the other. While that may be accepted as the general rule where nothing to the contrary is shown, in this case before the jury was called defendants' counsel said:

"I see nothing to be gained by having separate trials and therefore have no objection to setting them down for trial as one case. * * * Counsel for respondents consents that both parties be tried together owing to the fact that the testimony in the case applied equally to both parties and for the sake of avoiding the necessity of taking the time of the court, the two cases have arisen out of the same state of facts will be tried as one case."

The offense charged and testimony were the same as to each of the defendants. The testimony showed that they were out together getting orders for liquor the evening before their arrest and returned together the next morning in their car, loaded with over 50 gallons of moonshine whisky. Neither took the stand or offered any testimony. The record shows no suggestion by their counsel to court or jury that any distinction could be made, and in his various requests to charge he all through referred to them unitedly as "respondents" and the court but followed his form of designation. Under the testimony and circumstances of this case we do not find this reversible error.

The conviction is affirmed and the case remanded for such further proceedings as the law requires and the trial court may determine in harmony herewith.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.